**IN THE COURT OF COMMON PLEAS**
**WARREN COUNTY, OHIO**

FAITH LAWLEY, LLC
c/o Robbins, Kelly, Patterson & Tucker
7 West Seventh Street, Suite 1400
Cincinnati, Ohio 45202

and

ERIC NOVICKI
c/o Robbins, Kelly, Patterson & Tucker
7 West Seventh Street, Suite 1400
Cincinnati, Ohio 45202

and

CHRISTOPHER LAWLEY
c/o Robbins, Kelly, Patterson & Tucker
7 West Seventh Street, Suite 1400
Cincinnati, Ohio 45202

      Plaintiffs,

vs.

JOHN W. MCKAY
507 Windett Lane
Geneva, Illinois 60134

      Defendant.

Case No.: 21CV94682

Judge: Robert W. Peeler

**COMPLAINT FOR MONEY DAMAGES**

---

Now come Co-Plaintiffs, Faith Lawley, LLC, Eric Novicki, and Christopher Lawley, and for their Complaint against Defendant John W. McKay state as follows:

1. Defendant, John W. McKay ("McKay"), is believed to be a resident of Kane County, Illinois, and frequently travels to and spends time in Warren County, Ohio and conducts business in Warren County, Ohio.

2. Plaintiff, Faith Lawley, LLC ("Faith Lawley"), is a limited liability company organized under the laws of the State of Ohio doing business in Warren County, Ohio.

04321992-1

3. Plaintiff, Eric Novicki ("Novicki"), is a resident of the State of Ohio, Warren County, and resides at 6901 Man O'War Lane, Mason, Ohio 45040, and is a member of Faith Lawley, LLC.

4. Plaintiff, Christopher Lawley ("Lawley"), is a resident of the State of Ohio, Warren County, and resides at 8544 Meadowbluff Court, Cincinnati, Ohio 45249, and is a member of Faith Lawley, LLC.

5. The Court has subject matter jurisdiction over this action pursuant to, without limitation, Ohio Rev. Code § 2305.01.

6. This Court has personal jurisdiction over McKay because McKay caused tortious injury by acts in the State of Ohio.

7. Venue is proper in this Court pursuant to Ohio R. Civ. P. 3, as McKay conducted activity in Warren County that gave rise to the claims for relief set forth in this Complaint.

8. McKay and Faith Lawley entered into a certain Transfer Agreement effective February 26, 2010 ("Transfer Agreement") wherein McKay sold 100% of his limited partnership interest in Granite Creek Flex Cap I, L.P. ("Granite Creek") to Faith Lawley (the "Interest") but retained an option to repurchase said Interest (the "Option") that expired on December 31, 2012.

9. A true and accurate copy of the Transfer Agreement is attached hereto as Exhibit 1, redacted for certain private information. McKay has a full unredacted copy of the Transfer Agreement.

10. McKay did not exercise his Option and after it expired he sent an email to Novicki on February 19, 2013 wherein McKay asks Novicki to "propose whatever you want," asks to be thrown "a bone, only after you [Faith Lawley] make a good return" and even

admits that "I [McKay] know my contract rights are gone." A true and accurate copy of that email is attached hereto as Exhibit 2 and is referred to herein as "McKay's 2013 Email."

11. On March 8, 2018 McKay filed a Complaint against Faith Lawley, Novicki, and Lawley in the Circuit Court of the Sixteenth Judicial District in Kane County, Illinois (the "Illinois Complaint"). A copy of the Illinois Complaint is attached hereto as Exhibit 3.

12. McKay alleged in his Illinois Complaint that after the Transfer Agreement was executed and the Interest was transferred to Faith Lawley, Plaintiffs and McKay entered into a separate oral contract and a separate written contract, both of which resulted in McKay being entitled to payments related to the Interest. Those allegations will be referred to herein as "McKay's Breach of Contract Allegations."

13. All actions hereinafter described took place in Warren County, Ohio.

14. On April 23, 2018, Plaintiffs filed a complaint against McKay in Warren County, Ohio Court of Common Pleas (the "Declaratory Judgment Complaint") which was assigned case no. 18CV91051 (the "Ohio Lawsuit"). A true and accurate copy of the Declaratory Judgment Complaint is attached hereto as Exhibit 4.

15. The Declaratory Judgment Complaint was filed under Ohio's Declaratory Judgment Act and sought a declaration that the Transfer Agreement was not "modified, amended, or otherwise altered in anyway" and that McKay was "not entitled to any additional compensation as a result of the [Interest]." (Declaratory Judgment Complaint, para. 22).

16. On October 9, 2018 McKay filed an Answer and Counterclaims against Plaintiffs. A true and accurate copy of such is attached hereto as Exhibit 5 and McKay's Counterclaims were as follows: (1) breach of contract, which alleged a lack of consent from the General Partner of Granite Creek; (2) fraud in inducement of contract, based on the

same lack of consent; (3) estoppel barring contract enforcement, alleging that Plaintiffs misrepresented that all corporate formalities were completed (i.e. based on the same lack of consent); (4) failure of consideration and impossibility, based on the same lack of consent; (5) estoppel and waiver of limitation of time to execute the repurchase Option, alleging that McKay was told he would receive additional compensation for not exercising the Option; (6) tortious bad faith, alleging that Plaintiff acted in bad faith by negotiating with McKay for the payment of additional consideration of McKay's Option; and (7) prejudgment interest ("Counterclaims").

17. On October 19, 2018, Plaintiffs' Counsel sent a letter to McKay's attorney addressing why the claims made in McKay's Counterclaims were frivolous. A true and accurate copy of that letter is attached hereto as Exhibit 6 (that letter will be referred to herein as the "Rule 11 Letter").

18. The Rule 11 Letter specifically addressed McKay's claims based on the alleged lack of consent and provided a copy of the transfer's Request for Approval of Transfer Certificate ("RATC") showing that all necessary parties consented to the transfer of McKay's interest. (See Exhibit A attached to the Rule 11 Letter). The Rule 11 Letter also stated that McKay's claims were based on his "own self-serving emails" and attached to the Rule 11 Letter were multiple emails exchanged between McKay and the members of Faith Lawley which show that McKay made various offers to Faith Lawley over a long period of time, none of which were ever accepted.

19. On November 1, 2018 McKay's attorney responded to the Rule 11 Letter and a true and accurate copy of that response is attached as Exhibit 7 (the "Rule 11 Response Letter"). The Rule 11 Response Letter doubled down on McKay's allegation that the transfer lacked some kind of contractually required consent.

20. On November 5, 2018, counsel for Plaintiffs replied to the Rule 11 Response Letter and requested legal authority to support McKay's position. (A copy of that letter is attached as Exhibit 8 and is referred to as the "Rule 11 Support Letter").

21. The Rule 11 Support Letter clarified that if there was some type of defect in the transfer, the Transfer Agreement required the parties to cooperate "…in order more effectively to consummate or document the transactions contemplated by [the Transfer Agreement]." (Transfer Agreement, ¶10). Such a contractual obligation would necessarily negate McKay's argument the agreement could somehow be declared void because of an alleged defect in the transfer, such as a lack of consent.

22. McKay never responded to the Rule 11 Support Letter, except to continue with his frivolous and baseless claims.

23. On September 10, 2019, nearly a year after the Rule 11 Response Letter, McKay filed an Amended Answer, Affirmative Defenses, and Counterclaims ("Amended Counterclaims") and a true and accurate copy of such is attached hereto as Exhibit 9.

24. McKay's Amended Counterclaims maintained the same claims for breach of contract, fraud in the inducement, estoppel barring contract enforcement, and estoppel and waiver of limitation of time to execute repurchase option that were made in his Counterclaims but added a claim for fraud based on allegations that McKay was told he could exercise his contractual option after the contractual deadline ("Amended Counterclaims").

25. McKay's Amended Counterclaims relied extensively on McKay's claim that he was orally promised that he could exercise the Option after the Option's deadline. (Amended Counterclaims, paras. 38, 42, and 45). This claim of McKay's will be referred to hereinafter as "McKay's Self-serving Assertion."

26. McKay's Counterclaims and Amended Counterclaims did not include McKay's Breach of Contract Allegations that he previously alleged in the Illinois Complaint. As such, McKay abandoned his claim that the parties entered into a separate oral and written contract and instead formulated a new argument based on McKay's Self-serving Assertion.

27. Dispositive motions were filed in the Ohio Lawsuit and on March 12, 2020, the Warren County Common Pleas Magistrate entered a decision that granted Plaintiffs' Motion for Summary Judgment ("Magistrate's Decision").

28. The Magistrate's Decision is attached hereto as Exhibit 10 and stated in part the following: (1) "McKay has failed to identify, much less prove, any breach of the Transfer Agreement" because "[t]here is no evidence in the record suggesting that Lawley did anything but facilitate this review and approval process" (Magistrate's Decision, pg. 9.), (2) "there is no evidence in the record, nor is there a coherent assertion, that Lawley failed to perform any of his obligations under the Agreement" (Magistrate's Decision, pg. 11), and (3) "there is no genuine issue of fact regarding whether Lawley performed all formalities called for under the contract." (Magistrate's Decision, pg. 11). In other words, the Magistrate found Plaintiffs properly facilitated the transfer of the Interest and the Transfer Agreement did not obligate Plaintiffs to obtain consent from the SBA or the General Partner of Granite Creek regarding the Option.

29. The Magistrate's Decision conforms directly with the Rule 11 Letter.

30. On June 17, 2020 Judge Robert W. Peeler overruled McKay's objections to the Magistrate's Decision and adopted the Magistrate's Decision. A copy of that decision is attached hereto as Exhibit 11.

31. On July 28, 2021 the trial court entered its Final Judgment Entry in accordance with the June 17, 2020 Decision, which is attached hereto as Exhibit 12.

32. McKay filed a Notice of Appeal to the Twelfth District Court of Appeals on August 25, 2020 and oral arguments were heard on March 15, 2021.

33. On June 28, 2021 the Appeals Court entered its Judgment Entry that affirmed the Trial Court's July 28, 2021 Judgment Entry and issued an Opinion overruling McKay's assignments of error. A copy of both are attached hereto as Exhibit 13.

34. Most notably, the Twelfth District's Opinion expressly stated that McKay's 2013 Email "flatly contradicts McKay's affidavit [i.e., McKay's Self-serving Assertion"] made nearly seven years later." (Opinion, pg. 11). Accordingly, the Twelfth District found that McKay's Self-serving Assertion was (1) unsupported by the evidence, (2) contradicted by McKay's 2013 Email, and (3) insufficient to create a genuine issue of fact. (Opinion, page. 12).

## COUNT ONE
## MALICIOUS CIVIL PROSECUTION

35. Plaintiffs incorporate by reference all prior allegations as if fully rewritten.

36. McKay maliciously instituted his lawsuit in Illinois and maliciously instituted his Counterclaims and Amended Counterclaims in the Ohio Lawsuit.

37. McKay lacked probable cause for filing the Illinois Complaint, which is evident from the fact that McKay's Breach of Contract Allegations were abandoned and not alleged during the Ohio Lawsuit.

38. McKay also lacked probable cause for bringing his Counterclaims and Amended Counterclaims in the Ohio Lawsuit as proven by McKay's 2013 Email which shows that McKay knew his Counterclaims and Amended Counterclaims were baseless.

39. McKay's claims against Plaintiffs were vexatious and frivolous in violation of Ohio law and Plaintiffs put McKay on notice that his assertions were baseless and frivolous in 2018, as demonstrated by the Rule 11 letters exchanged.

40. Both the Illinois proceeding and the Ohio Lawsuit were terminated in Plaintiff's favor.

41. McKay's claims made in the Illinois proceeding were baseless and wholly without merit as demonstrated by the fact that McKay abandoned McKay's Breach of Contracts Allegation entirely in the Ohio Lawsuit.

42. McKay's claims made in the Ohio Lawsuit were baseless and wholly without merit as demonstrated in the Ohio Lawsuit's decisions at both the trial and appellate levels, which mirror the Plaintiffs' Rule 11 correspondence and agreed that McKay's "naked and self-serving affidavits" were insufficient to survive summary judgment because the factual contentions made lacked evidentiary support, "flatly" contradicted McKay's 2013 Email, and/or were not warranted by the evidence.

43. McKay's actions were willful, wanton, malicious, oppressive, gross, egregious, and evidence a reckless disregard for the rights and safety of Plaintiffs.

44. McKay through the assertion of defenses and counterclaims in the Ohio Lawsuit made factual contentions that had no evidentiary support and/or were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; made factual contentions that were not warranted by the evidence; and made factual contentions that were "flatly" contradicted by McKay's 2013 Email.

45. McKay repeatedly made false claims, assertions, and defenses that had no evidentiary support, were not warranted by the evidence, and in fact, were false.

46. As a result of McKay's actions, Plaintiffs were unable to freely control the Interest during the course of the Ohio Lawsuit and the Illinois lawsuit.

47. As a result of McKay's malicious conduct, Plaintiffs were forced to unnecessarily expend substantial time and spend significant funds that they would not have expended had McKay not engaged in such conduct, which included but are not limited to funds incurred on attorney's fees, court costs, and the expenses associated with discovery, which accordingly damaged Plaintiffs and adversely affected them.

## COUNT TWO
## ABUSE OF PROCESS

48. Plaintiffs incorporate by reference all prior allegations as if fully rewritten.

49. In the alternative to the Malicious Prosecution claim, Defendant instituted the the Counterclaims and Amended Counterclaim in the Ohio Lawsuit in proper form and with probable cause.

50. However, McKay perverted the Ohio Lawsuit in an attempt to accomplish an ulterior purpose for which it was not designed.

51. McKay used his claims in the Ohio Lawsuit as a form of coercion in an attempt to force the Plaintiffs to grant McKay ownership in the Interest, to which McKay had no legal right and the Court did not have authority to order.

52. McKay used his claims in the Ohio Lawsuit in an attempt to coerce Plaintiffs to agree to give McKay a percentage of the Interest's future distributions, to which McKay had no legal right and the Court did not have authority to order.

53. As a result of McKay's abuse of process, Plaintiffs were forced to unnecessarily expend substantial time and spend significant funds during the Ohio Lawsuit that they would not have expended had McKay not engaged in such conduct, which included but was

04321992-1

9

not limited to funds incurred on attorney's fees, court costs, and the expenses associated with discovery, which accordingly damaged Plaintiffs and adversely affected them.

54. Plaintiffs suffered direct damage as a resulted from McKay's wrongful abuse of process.

WHEREFORE, Plaintiffs, Faith Lawley, LLC, Eric Novicki, and Christopher Lawley, pray for judgment against Defendant, John W. McKay, as follows:

An award to Plaintiffs, Faith Lawley, LLC, Eric Novicki, and Christopher Lawley, against the Defendant, John W. McKay, in an amount to be determined at trial, but in excess of $25,000, plus pre and post judgment interest, reasonable attorneys' fees, costs, other reasonable expenses, and any other relief to which they are entitled to.

Plaintiffs also seek a separate award of punitive damages as Defendant's actions demonstrated actual malice and/or aggravated or egregious fraud.

Respectfully submitted,

Richard O. Hamilton, Jr. (0072643)
Robert M. Ernst (0084096)
Robbins, Kelly, Patterson & Tucker
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
(513) 721-3330; (513) 721-5001 fax
*rhamilton@rkpt.com*
*rernst@rkpt.com*
**Attorney for Plaintiffs**

## INSTRUCTIONS TO THE CLERK

✓ Please serve the Summons and Complaint by certified mail to the Defendant at the addresses set forth in the caption of the Complaint.

11/8/21- cm ℞ SD

04321992-1

10